May it please the Court, Randolph Gaw and Shereen Bokshay, pro bono counsel for appellant Edward Furnace. Your Honors, this morning I will be handling the opening argument while my colleague Ms. Bokshay presents our rebuttal. The district court How much time would you like to reserve for rebuttal? Three minutes, Your Honor. Thank you. There is this little clock down there that most people, it seems to fade into the distance once you get arguing, but I just thought I'd point that out there. Thank you, Your Honor. The district court erred in granting summary judgment for the defendants. For today's argument, I would like to focus on two issues in particular. First, this Court's recent decision in Thomas v. Ponder is controlling precedent and requires reversal on both Mr. Furnace's Eighth Amendment and his due process claims. And second, the district court's failure to analyze Mr. Furnace's First Amendment retaliation claim under the Turner factors compels reversal of that claim as well. Your Honors, in examining the undisputed evidence in the record under the applicable standard of review, which is de novo, it is clear that in light of the Thomas decision, this Court should reverse summary judgment against Mr. Furnace's Eighth Amendment and due process claims. In Thomas, this Court reversed summary judgment against an Eighth Amendment claim brought by a different facility seat inmate named Otis Thomas, whom Salinas Valley Prison staff had also placed in a modified program at the same time and under the same circumstances as Mr. Furnace. District Judge Chesney, who presided over both the Thomas case and this one, had agreed with prison staff that Mr. Thomas's extended deprivation of outdoor exercise was justified because his failure to sign the CDC 120AP pledge meant that he posed some type of vague, undefined risk to prison staff. Now, she didn't have the benefit, of course, of the final Thomas appellate decision at the time she issued the decision in Mr. Furnace's case. Is that correct? That is correct, Your Honor. So is there anything, in your view, from a legal standpoint, different about the Thomas decision that was sent on remand in your client's case? I think there is. From an Eighth Amendment perspective, there is nothing of significance that I would say distinguishes this case from Thomas and the same results you control. What is your position with respect to the First Amendment retaliation claim? You've got a Turner test, you've got a Rhodes test, and I'm wondering whether you think the Court misapplied the Rhodes test in this case, and if so, why? Your Honor, as this Court held in Brodheim, in evaluating the fifth prong of the Rhodes test on a First Amendment retaliation claim, it is to apply the four-factor Turner test to reach that determination. Here, the district court made the omission of Turner. We have no idea whether or not the district court applied the Turner test. It certainly doesn't appear, reading the opinion, that the district court applied the Turner test, and therefore, we hold that that decision by itself constitutes reversible error, and this Court should remand for full evaluation of Mr. Furness's First Amendment retaliation claim under the Turner test. Well, in this case, your client really wasn't retaliated against, was he? This was just a standard prison policy that dictated what was done here. Well, Your Honor, according to my client, he was retaliated against because he indulged in his First Amendment right against compulsory speech. He had a nonviolent disciplinary history within the prison, was otherwise cooperative, and solely on that basis, the defendants deprived him of outdoor exercise for more than 20 consecutive months. I guess what I'm wrestling with is that, on the one hand, you have a prison policy that's, you know, whether there's an emergency or no emergency, they just apply this across the board. You could argue at least that that's what happened here. You can also argue that it was discriminatory as against your client. And I guess that's where I'm wondering how the Rhodes test, whether that was properly applied in this case. Well, under the other four factors of the Rhodes test, which are there needs to be an adverse action against the prisoner because of their engaging in protective conduct that created a chilling effect upon their First Amendment rights, I believe that Mr. Furness here has satisfied all four other factors. There clearly was an adverse action. He was placed in a modified program, deprived of all outdoor exercise, deprived of human contact and various resocialization programs that occur at the prison. It was because of his engaging in First Amendment – his First Amendment right to not, you know, participate in compulsory speech. And it certainly had a chilling effect as any prisoner. Well, if it's – if the Turner test or the applicable test, it seemed that the district court did look at the penilogical interest and found that there was a basis for this policy, it was a reasonable policy, why wouldn't, in effect, that have already been addressed, albeit not under the technical rubric of Turner? Well, Your Honor, arguably, the district court did do a Turner test under the first prong of the Turner test, whether there was a rational relationship between the prison policy and the legitimate penilogical purpose. Perhaps. We don't – again, we don't know because the district court makes no mention of it. But there's – Supreme Court precedent, and this Court's precedent as well, requires a full analysis under the remaining three factors. It is not enough for the district court to simply perform the first prong of the Turner test. Ironically, if the – if the prison inmate wins under the first prong of the Turner test, then that's the end of the discussion. But if the prison wins under the first prong, this Court is still required to perform the other three prongs. Does it make any difference – let's just say you're correct. Let's say that the Court misapplied the Roach test. The Turner test is very differential to penilogical – legitimate penilogical interest, is it not? Yes, it is. And in this case, you know, your point about the exercise is one thing. But this – we're talking about the First Amendment aspect. You don't really have an emergency here. This is a policy that supposedly is uniformly applied to everybody. Why is this a retaliation against your client under Turner? Well, Turner doesn't – doesn't analyze whether the conduct is retaliatory. Turner just simply analyzes whether the policy is. I perhaps mistaken. But if the Court is generally – is generally going to do that, what I mean is if there is a genuine penilogical basis for the prison's restricting speech and it applies to everybody, why would we remand? Even though the Court may be misapplied Roach, when you get to the bottom line, it's Turner we're looking at. Yes. And doesn't this satisfy Turner? No, because the policy is arbitrary and irrational. Even if the legitimate – even if the penilogical interest is legitimate, and we don't dispute that it is, determining whether someone should stay in modified program for 20 consecutive months solely on the basis of whether he signs an illusory, meaningless pledge, without evaluating any other factor, that is the very definition of arbitrary and irrational. Do you have a case that suggests that you're correct? Morrison v. Hall, Your Honor, for example. Brodheim v. Crye. There's a long list of cases set out in our briefing where we show that it's a simple application of common sense as to determine whether or not a policy is arbitrary and irrational. Would you like to save the remaining time? Yes, I would, Your Honor. Thank you. Good morning. Good morning. Good morning. May I please the Court? My name is Trey Smirino. I'm here from the Attorney General's Office, State of California. We represent the defendant's families in this case. This case presents a difficult balance between competing interests. Captain Ponder and the other correctional officers at Salinas Valley State Prison must continually – Before we get to that part, do you agree that the Thomas v. Ponder case is controlling with respect to the denial of exercise? No, Your Honor, I do not. I believe that the Court's recent decision in Noble v. Adams shows that the district court properly decided this case when she found that Mr. Furness did not sustain a constitutional violation under the Eighth Amendment. She wasn't aware, of course, of our later case. Why do you say that Noble satisfies the situation here? The similarities between this case and the case presented in Noble v. Adams are substantially similar. Several factors. First of all, both cases dealt with Level 4 inmates. Level 4 inmates require the highest level of security because of their behavior in prison or outside of prison based on their conviction. Most Level 4 inmates are either life without parole, serving a 50-year determinant sentence, or they were sentenced under the Three Strikes Law. I'm a little puzzled. I thought Noble dealt with the qualified immunity issue. Yes, it did, Your Honor. I'm using that as a basis to distinguish the Thomas v. Ponder. Yes, Your Honor. There are two bases in the Noble v. Adams case on which this Court could affirm the district court's ruling. In Noble v. Adams, the Court found that there was qualified immunity. The correctional officers were entitled to qualified immunity. But in addition, they found that there was no evidence to support a finding of the subjective element for an Eighth Amendment analysis. And so on that – on those two bases, this Court could affirm the district court's ruling. Well, how does this differ in that regard from the Thomas case? How does Furness differ from Thomas? Yes. This case is different than the record that was before the Court, I believe, in the Thomas v. Ponder case. First of all, the record does show that Mr. Furness did not ever sign the pledge requirement until March of 2007. Moreover, before this Court, there's the record of reasonableness, that Captain Ponder made every effort to return the modified program to a regular program, which is the primary goal of any lockdown. Thomas – Thomas involved 14 months' restriction to sell? Yes, Your Honor. Thomas – And this case involves 20 months. Plaintiff? Yes, Your Honor, 20 months. And Noble v. Adams involves 15 months of modified program. There's an important difference, getting back to the difference between this case and the Thomas v. What, in your opinion, would constitute an Eighth Amendment violation? Five years of confinement? Noble v. Adams' holding provides that in 2002 or in 2011, it's not sufficiently clear exactly when a problem – a facility – I'm just asking you as a representative of the State. It would be – it would be – You're here arguing that 20 months is okay. I'm here arguing, Your Honor, that the facts in this case did not violate Mr. Furness's constitutional rights under the Eighth Amendment, the First Amendment, or the Fourteenth Amendment in this case. Well, I guess where I'm hard – I'm having trouble, as you said, Willie, he didn't sign the pledge. No, that's the whole point. I mean, you know, the circumstance here, as I understand it, is that he comes into the population after the big, you know, dust-up and problem, so he's not even there as a potential participant or observer in the problem. He comes into this situation with a good short-term previous record, in any event, in terms of infractions and that sort of thing, and then basically they're holding this piece of paper over him and he won't sign it. And that is correct, Your Honor. He was in Facility C and then transferred to Facility C. Correct. After the July 14th, 2005 stabbing of two correctional officers, the entire prison was placed on lockdown, and then it slowly went to a modified program. The mission statement of Facility D changed. That's why Furness, as a Level IV inmate, was moved to Facility C. It's important to note, though, that for Captain Ponder, the objective was to return it to a regular program, and as he states in his – in several memos to the warden, the process that he developed in order to return the Facility C modified program was based on his belief, based on his experience, that Level IV inmates feel that are not part of a gang feel the peer pressure that is exerted by Level IV gang members and that the violence in the prison is derived from – mostly derived from inmates that are involved in gangs. Can I just stop you for a second? Because I understand that's the – kind of his foundation for why he creates this circumstance, but I'm still having some trouble understanding why at bottom it's not the same as Thomas for purposes of the Eighth Amendment, because what you're talking about to a degree may get into objective questions related to qualified immunity, which I think we'd be hard-pressed to decide here only because it hasn't come up, you know, in that context. So we're kind of still on a constitutional violation, and it's just not clear to me from a legal standpoint what the difference is between the two cases. First of all, it's important to note that in – that the process that was developed by Captain Ponder, it wasn't simply based on sign the pledge and you get out. It was based on several factors, and one factor was it was an attempt to evaluate each individual inmate on – each individual inmate under the process. Every inmate has a central file that was reviewed for potential for violence. The correctional counselor over that inmate gave a rating after the review. In addition, staff gave a – did a more informal review of each inmate to determine whether or not there was a potential for violence. And then there was the interview process, and then there was also the pledge requirement where Captain Ponder believed that if an inmate affirmed, committed himself to nonviolence, then that inmate's – then they could more accurately assess an inmate's potential for violence in hopes to return the modified program to a regular program. And what do you do – I mean, here's this gentleman who is given this piece of paper with typos. I mean, it doesn't exactly look like a, you know, the United Way pledge all nicely put up on prison stationery. And one of the things he says is, I'm worried that if I sign this, I might be giving up one of my legal rights. But, of course, he can't go to the library to even research that because he's in this lockdown situation. So how does he get out of that catch-22? First of all, the library was still accessible to inmates in the lockdown program. If they didn't have a court date, they could use the paging system where they would get information from the library. And if they did have a court date, then they would be able to go to the library on a regular basis. The record in this case shows that he went to the library 31 times. So he did have access to legal materials that would help him answer these questions. Moreover, the interview was confidential, and that that was an affirmation by the officers made to Mr. Furness that it was a confidential interview. And it's important. It's an extremely important point in a level four in prison that the inmate is advised, which he was, that it's confidential. Because one of the dynamics in prison is that if certain inmates believe that another inmate may have given information to correctional officers, then there might be some form of retaliation from one inmate to another. So the idea that it's confidential was an important aspect of Captain Ponder's process and program to return this case to, excuse me, return the prison to a regular program. But this court is able to decide this case based on qualified immunity. The court did that in Norwood v. Vance. In that case, the defendants did not bring up qualified immunity. It proceeded to trial. Qualified immunity was never brought up by the defendants, addressed by the district court. But this court provided qualified immunity to those officers in that instance. We ask that the court do the same here from the district court's order. The court didn't really weigh it, did it? The court did not find a constitutional violation. So the court did not proceed to qualified immunity. If there were a constitutional violation based upon Tom's case, wouldn't the district court determine whether there was qualified immunity? Based on Norwood v. Vance, the court could decide that. Oh, yeah, we could. Right now, isn't that where Thomas is, is that the same judge is? We have a very good indication of what the court would do. The court didn't find a constitutional violation. And if the district court didn't believe there was a constitutional violation, and in addition, since her order was issued, this court decided Noble v. Adams. There's a very good indication of what the district court would do. What would be the harm rather than us with the district court not having looked at this, if we were to disagree with you on how Thomas applies and say, well, it does apply, but there always, of course, is this big remaining issue of qualified immunity, what would be the harm in having the district court make that assessment as an initial matter? In terms of judicial economy, we would anticipate that what the district court would decide, this matter may end up, again, before this court, but also Captain Ponder should not be held liable for his actions for damages, which is what qualified immunity does. Right, but he wouldn't be in any further risk if the district court were to decide this, because that's what qualified immunity tries to resolve, doesn't it? Yes, but only in terms of having the matter resolved. I understand. And I believe my time is up, if I may sum up. Yes, please. Your Honor, we would just ask that the court affirm the district court's order. In this case, Captain Ponder and the other correctional staff prudently and constantly review the modified program by issuing 68 prison status reports to ensure that the facility was safe and secure for inmates and correctional staff, which is exactly what qualified immunity is meant to cover. Thank you very much. Thank you. Would you put three minutes for rebuttal, please? Good morning, Your Honors. Shereen Bakshi for Appellate Edward Furness. I would just like to make a few brief points in rebuttal. The first deals with the Thomas v. Ponder case. This case is absolutely controlled by Thomas v. Ponder. This is the exact same case. It's the same prison, the same facility C, the same July 14, 2005 incident, which triggered the state of emergency, and the same modified program. The same process is exactly at issue. The State has tried to distinguish the Thomas case, but the only difference here is that Mr. Furness' case is even more compelling. How do you distinguish Noble from this case? Noble v. Adams was, in my opinion, factually very distinct. First of all, it was a qualified immunity case, so it was, you know, dealing with a slightly different standard. But also, in the Noble case, there was a prison-wide lockdown, based on a riot wherein 21 prison staff were injured and 9, I believe, were taken to the hospital. The entire prison was locked down. There was no pledge requirement. What was at issue in the Noble case was the duration of the deprivation of all of the inmates there, and Mr. Noble in particular. There was no question of the reasonableness of a pledge requirement. The only issue was whether or not the length of the deprivation was constitutionally permissible. In this case, we're not talking about a prison-wide lockdown. We're talking about a modified program that was admittedly intended to return the facility to normal programming and make it a safe place, but it was based on the arbitrary pledge requirement. And Mr. Furness, in our case, was completely singled out, whereas Mr. Noble was part of a state-wide, a prison-wide process. So I believe for that reason, it's very distinguishable. And the same is also true of Nord v. Vance. There was no pledge requirement. The inmate in that case was not singled out in the same way that Mr. Furness was here. Quickly going back to the Thomas case, I would just point out that Mr. Furness's deprivation was 6 months longer than Mr. Thomas's, and I believe that's the only distinguishing feature of that case. Kennedy. Let's talk about qualified immunity. Let's say that you're right about the deprivation and that it was an unconstitutional deprivation. Why would Officer Ponder not be entitled to qualified immunity in this case? Well, Your Honor, I believe that the case law establishes that there was a clear constitutional violation. Well, how could that be? We didn't even rule on this until after the District Court made its determination in Thomas's case. That's true, but I believe this Court's case law, prior to the Thomas v. Ponder case, would also support that decision. Do you have a case that would be on all fours prior to that time? I don't know that I would say all fours, but certainly going back to the Spain v. Procurnio case of 1979, establishes an inmate's right to outdoor exercise, and consistently this Court has upheld that right for far less terms of deprivation. I believe six-week deprivation has been found to be a constitutional violation, and we certainly cited that case in our brief. I'd like to just ask one last question on the due process issue. We literally have a record littered with administrative appeals and grievances. Why would he be entitled to something more than that? Well, Your Honor, I believe for a number of reasons those weren't constitutionally sufficient, but the main one I would say is that those opportunities were meaningless in light of the pledge requirement. It's clear from the record that but for signing the pledge, Mr. Furness was never going to be released from modified program. So without some sort of hearing or other informal procedure where he genuinely had an opportunity to address his status in modified program beyond just whether or not he was willing to sign this pledge, any opportunity to contest his situation was meaningless. Thank you. Thank you very much. The case just argued. Furness v. Evans is submitted. The Court would like to thank Mr. Gunn, Ms. Barchet for your pro bono counsel here. I know also the State usually appreciates having a well-briefed brief to respond to, and it's very important to our pro bono program to have counsel willing to volunteer their time. So thank you. Thank you also, Mr. Marino, for your argument. Case is submitted.
judges: Hawkins, McKeown, Smith